MATTHEW L. BARNEY *v.* WILLIAM S. DOUGLASS, and JOHN K. HUNT, Trustee. OLIVER SHEPHARD, Claimant.

Where it appeared, that one summoned as trustee had executed to the principal debtor a negotiable promissory note, and that the note, before it became due, and before the service of the trustee process upon the trustee, had been, for a valuable consideration, indorsed and transferred by the principal debtor to one who now appeared as claimant in the case, and that, before the trustee received notice of the indorsement, service of the trustee process was made upon him, in his absence from the state, by leaving a copy at his house, and after this, but before the trustee had notice of the service, the indorsee gave notice to the trustee of the indorsement, it was held, that, under the statute of 1841, the plaintiff in the trustee process would hold the amount due from the trustee upon the note.

And it was also held, that a promise, made by the trustee at the time he received notice of the indorsement, and before he had notice of the service of the trustee process, to pay the note to the indorsee, not being made on any new consideration, did not change the rights of the parties, and would not entitle the trustee to be discharged, under the fifth section of chapter 29 of the Revised Statutes.

TRUSTEE PROCESS. It appeared that Hunt, who was summoned as trustee, executed a negotiable promissory note to Douglass, the principal defendant, bearing date September 14, 1843, and payable in sixty days; that on the twenty first day of September, 1843, Douglass, in good faith and for a valuable consideration, indorsed

Barney *v.* Douglass & Tr.

the note to Shephard,—who now appeared as claimant in the case; that on the fourteenth day of November, 1843, service of the writ in this case was duly made upon the trustee, in his absence from the state, by leaving a copy at his house; that on the twenty eighth day of November, 1843, and before Hunt had any knowledge of such service having been made, he was informed by one Huntington, as the agent of Shephard and at his request, that the note had been transferred to Shephard, and that Shephard would look to him for payment, and that Hunt thereupon answered "Very well, I will pay it"; and that afterwards, on the same day, Hunt first had knowledge of the service of the trustee process upon him.

The county court decided, that the trustee was chargeable for the amount of the note.    Exceptions by claimant and trustee.

*C. D. Kasson* for claimant and trustee.

1. The trustee became liable to the claimant, by promising to pay the note to him, before he had knowledge of the trustee process. This brings the case within sect. 5 of chap. 29 of the Revised Statutes.*    The claimant's right to the note, as against the principal debtor, accrued prior to the right of the plaintiff; and the claimant first gave to the trustee actual notice of his claim.    Actual notice should take precedence of constructive notice.    *Van Staphorst et al.* v. *Pearce*, 4 Mass. 258.    *Dix et al.* v. *Cobb & Tr.*, Ib. 510. *Foster* v. *Sinkler et al.*, Ib. 450.    *Williams et al* v. *Marston & Tr.*, 3 Pick. 65.    *Ammidown* v. *Wheelock*, 8 Pick. 470.

2. The statute of 1841 does not in fact extend to cases of notes transferred in *good faith,* but only to cases where negotiable paper is transferred in bad faith, to avoid creditors.

*F. G. Hill* for plaintiff.

Negotiable paper, whether under or over due, is made subject to trustee process.    Acts of 1841, p. 6.    This leaves the question as it

---

*By which it is enacted, that "If, after the service on the trustee, but before he has any knowledge thereof, he shall, in good faith, make any payment, or become in any way liable to a third person, for, or on account of, the goods, effects, or credits, in his hands," &c., "he shall be allowed therefor, in the same manner as if the payment, or delivery, had been made, or the liability incurred, before the service of the writ on him."

was when the case of *Britton* v. *Langley & Tr.*, 9 Vt. 257, was decided. The promise made by the trustee to the claimant did not impose upon him any liability, within the meaning of sect. 5 of chap. 29 of the Revised Statutes. There was no new consideration passed,—no new contract substituted for the note, on which Shephard could claim a right to sustain a suit, or by which Hunt could delay payment, or defend against the note. Shephard has no greater rights against Hunt now, than he would have had, if Hunt had made no reply, when notified of the transfer.

The opinion of the court was delivered by

ROYCE, Ch. J. In this case, judgment having passed against the principal defendant, and the trustee having admitted himself indebted upon a negotiable promissory note executed by him to the principal defendant, one Shephard appeared and interposed his claim to the note;—and the validity of that claim, as against Barney, the attaching creditor, is the only matter to be now determined.

The case finds, upon the disclosure and other evidence, that the note was indorsed in good faith, and for sufficient consideration, by Douglass to Shephard, before the same fell due; that the trustee process was served on the trustee in his absence, by leaving a copy at his house in the manner provided by law in such a case; and that, after such service, and before the trustee had personal notice of it, Shephard gave him notice, by an agent, that he was the assignee, holder and owner of the note.

Thus far it is clear, that the attaching creditor is entitled to hold against the claimant. The attachment was perfected by the service made, and did not require personal notice to the trustee, in order to bind the effects in his hands. That it was a full and perfect service appears by a comparison of section seven of the trustee statute with the law prescribing the mode of serving a writ of summons, and is necessarily implied in section five of the trustee statute, which provides for a case where the process has been served upon the trustee, and he has continued to act in ignorance of that fact. Now the statute of 1841 has subjected negotiable paper, whether under or over due, to the trustee process, "unless it shall appear, that the same had been negotiated and notice thereof given to the maker,

Barney *v.* Douglass & Tr.

or indorser, before the service of the process on him." And here there was a legal service of the process before such notice.

But the claimant insists, that his right is saved by section five of the trustee statute, which provides that the trustee shall be protected for any payment made to the principal defendant, and for any liability incurred to a third person, although the process shall have been previously served upon him, if he had, at the time, no knowledge of the service.

It appears that when the trustee was notified by the agent of Shephard, as before stated, he was told that Shephard would look to him for pay on the note, and he replied, "Very well, I will pay it." The question is, whether these expressions, under the circumstances, created such a liability of the trustee to a third person, as the statute contemplates. It is not enough, that they should operate to abridge the defence which he might otherwise make to the note; they must constitute a substantive ground of liability, a direct cause of action, which could be enforced by suit.

Had these expressions been used in reference to some demand, held and owned by Shephard, which could only be sued in the name of Douglass, they might, if so intended, have furnished a new cause of action to Shephard, the assignee; *Moor* v. *Wright*, 1 Vt. 57, and *Bucklin* v. *Ward*, 7 Vt. 195. But here the legal right of action upon the note was already in Shephard by the indorsement, as much so, as if the note had been originally executed to him. What, then, was the effect of the trustee's declaration to him, or his agent, that "he would pay the note?" As before remarked, it may possibly have precluded him from making certain defences to the note, which he might otherwise have set up; but we think it gave no new cause of action to Shephard. It was but a promise to do that, which the note, and the indorsement of it to Shephard, already bound him to do. It was not an undertaking to pay more, or less, than the amount of the note, or to pay it in a different manner, or at another time. Nor was it founded on any new consideration, nor intended to furnish to Shephard any new remedy. Hence the only action, which Shephard could bring, would be an action directly upon the note, and not upon this oral promise of the maker.

Judgment affirmed.